**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
            lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA D'ALOIS, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br>    v.<br><br>THE CLOROX COMPANY and HAMILTON BEACH BRANDS, INC.,<br><br>                                        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

1      Plaintiff Roberta D'Alois ("Plaintiff") brings this action on behalf of Plaintiff, and all others

2    similarly situated, against The Clorox Company and Hamilton Beach Brands, Inc. ("Defendants").

3    Plaintiff makes the following allegations pursuant to the investigation of Plaintiff's counsel and

4    based upon information and belief, except as to the allegations specifically pertaining to Plaintiff,

5    which are based on personal knowledge.

6                            **NATURE OF THE ACTION**

7      1.      This is an action arising from the false and misleading representations that

8    Defendants made for years about their HEPA air purifier (the "Air Purifier"), along with their

9    respective replacement filters (collectively, the "Products").

10      2.      Specifically, Defendants represented that the Air Purifier was equipped with High

11    Efficiency Particulate Air (HEPA) filters when in fact they were not.

12      3.      Independent testing by Plaintiff's counsel has shown that the filters used in the Air

13    Purifier and the replacement filters do not meet HEPA standards.

14      4.      Reasonable consumers have had no opportunity to find this out for themselves

15    because they cannot conduct HEPA standard testing.

16      5.      Defendants knew this, but continued hocking their wares, making a killing selling

17    the Air Purifier *and* replacement filters since the outset of the COVID-19 pandemic.  Defendants

18    sold their Products through Amazon.com and their own website.

19      6.      Defendants have profited greatly from the explosion in the air purifier market

20    brought about by the COVID-19 pandemic and yearly "once-in-a-lifetime" wildfires that have

21    ravaged the United States.  Consumers are rightfully concerned about maintaining indoor spaces

22    that are free of harmful pathogens and contaminants.  As a result, a large portion of Defendants'

23    gargantuan profits are attributable to their false HEPA filtration claims.

24      7.      But for Defendants' HEPA claims, the fair value of their Air Purifier would have

25    been substantially lower (i.e., their market price would have been closer to non-HEPA air purifier,

26    which sell at a discount compared to air purifiers with HEPA filters).  Put differently, Defendants'

27    HEPA misrepresentations allowed it to overcharge consumers in the amount of the HEPA-related

28    price premium – assuming there would be a market for Defendants' non-HEPA filters at all.

8.      Relatedly, Defendants' false and misleading representations induced reasonable consumers like Plaintiff into purchasing the Products.  Had Plaintiff and all other similarly situated consumers known that – contrary to Defendants' knowing representations – the Products did not have HEPA filters, they would have paid less for the Products or not purchased them at all.

9.      Plaintiff now seeks a return of the HEPA-related premiums that Defendants charged for their Products, on behalf of the Plaintiff and other similarly situated purchasers.  Plaintiff asserts claims on behalf of Plaintiff and all other similarly situated purchasers of Defendants' Products for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iii) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (iv) fraud; (v) unjust enrichment; and (vi) breach of express warranty.

## PARTIES

10.     Plaintiff Roberta D'Alois is a citizen of California, and resides in the city of San Francisco, CA.  Plaintiff purchased the Air Purifier on May 7, 2024 from Amazon.com for $69.95.  Plaintiff reviewed and relied on Defendants' warranties and representations about the Product's HEPA-grade air filter prior to purchasing the Product.  Plaintiff reasonably relied on Defendants' representations and believed that the Air Purifier was actually HEPA-grade.  Had Defendants not warranted and represented that the Product was HEPA-grade, Plaintiff would not have purchased the Product or would have paid substantially less for it.

11.     Defendant The Clorox Company is a California company with headquarters in Oakland, California.  Defendant the Clorox Company manufactures, distributes, advertises and sells the Products.

12.     Defendant Hamilton Beach Brands, Inc. is a Delaware company with headquarters in Glen Allen, Virginia.  Hamilton Beach licenses the Products and distributes them nationwide, including into California.

**JURISDICTION AND VENUE**

13.    This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) some members of the proposed Class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).

14.    This Court has personal jurisdiction over Defendant the Clorox Company because it was formed under the laws of California and has its principal place of business in Oakland, California.

15.    This Court has personal jurisdiction over Defendant the Clorox Company because it markets and sells the Products in California.

16.    This Court has personal jurisdiction over Defendant Hamilton Beach Brands, Inc. because it markets and sells the Products in California

17.    Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants transact significant business within this District; at least one Plaintiff resides within this District; and a substantial part of the events giving rise to at least one of the Plaintiff's claims took place within this District.

**FACTUAL ALLEGATIONS**

**A.    Air Purifier and the Air-Purifier Market**

18.    The Environmental Protection Agency estimates that "about 67 million tons of pollution were emitted into the atmosphere in the United States" in 2021 alone.[1]  This pollution comes at great cost to human health: "[p]oor air quality is responsible for an estimated 100,000

---

[1] Air Quality- National Summary, Environmental Protection Agency (2023) https://www.epa.gov/air-trends/air-quality-national-summary#:~:text=Emissions%20of%20air%20pollutants%20continue,atmosphere%20in%20the%20United%20States. (last visited September 16, 2025).

premature deaths in the United States each year."  Exposure to air particulates has also been linked to symptoms of depression, cognitive decline, and increased feelings of anxiety.

19.     Air pollution can also be a visceral reminder of human-driven climate change: the smoke from wildfires that have raged across both coasts of the United States since 2020 has quite literally blocked out the sun and forced millions of people indoors.  For many, the smoke has exacerbated health conditions such as asthma or emphysema.

20.     Concern about air quality skyrocketed in 2020, however, as wildfires intensified, and the airborne COVID-19 virus shut down the globe.

21.     As expected, consumer concern over airborne contaminants has helped the air-purifier market explode to $18.01 billion with expected growth to $25.26 billion in 2030.[2]  "[T]he COVID-19 pandemic has increased the demand for air purifiers, with the growing awareness of COVID-19 associated respiratory ailments and the rising need to curb cross-contamination. Factors such as increasing airborne diseases and growing health consciousness among consumers are driving the market."[3]

22.     Air purifiers come in various forms.  Among the most effective purifiers are those with HEPA filters.  HEPA, as defined above, is an acronym for "High Efficiency Particulate Air." HEPA filters are strictly designed and must adhere to certain specifications to be designated as HEPA.

23.     Specifically, a HEPA filter is a type of pleated mechanical filter that typically consists of sheets of randomly arranged fiberglass or plastic fibers held in an accordion shape by

---

[2] Research and Markets, *Air Purifier Market – Growth, Trends, COVID-19 Impact, and Forecasts (2022–2027)*, WWW.RESEARCHANDMARKETS.COM, https://www.researchandmarkets.com/reports/4987153/air-purifier-market-growth-trends-covid-19 (last visited September 15, 2025).

[3] Research and Markets, Air Purifier Market Outlook, 2028 https://www.researchandmarkets.com/reports/5775014/air-purifier-market-outlook?srsltid=AfmBOopv6TMadRLUaM7wM00PNV-B6uxCfDNLizzPo60HoDjhCpg4DAE0 (last visited September 15, 2025).

aluminum separators.  To be called a HEPA filter, the filter must capture at least 99.97% of dust,

pollen, mold, bacteria, and any airborne particles with sizes ranging from 0.1 to 0.3 microns.[4]

24.     According to the Centers for Disease Control and Prevention (CDC), HEPA filters

"are the most efficient filters on the market for trapping particles that people exhale when

breathing, talking, singing, coughing, and sneezing."[5]

25.     The reason why consumers may care that the air purifier they purchase meets the

HEPA standard is self-evident.  It offers near certain protection against the transmission of airborne

pathogens in the home (if the purifier is given enough time to circulate the air), and it can also filter

out pollution caused from events like wildfires, which are growing ever more frequent.

26.     Consumers want the assurance that the HEPA standard provides, and they are

willing to pay more for HEPA filters, i.e., consumers are willing to pay a premium for filters that

meet the HEPA standard.  A review of current sales prices, across brands that sell both HEPA and

non-HEPA filters (what marketers sometimes call "HEPA-type" purifiers), indicates that HEPA

purifiers sell – on average  at a 41% premium to non-HEPA filters within the same brand:

### TABLE A

| Model | HEPA | | | Non-HEPA | | | HEPA premium |
|-------|-------|----------|----------|-------|----------|----------|---------|
| | Price | Coverage | Price/sf | Price | Coverage | Price/sf | |
| Molekule | $1,015 | 1,000 sf | $1.02 | $600 | 1,000 sq/ft | $0.60 | 41% |
| Holme | $40 | 80 sf | $0.50 | $35 | 109 sq/ft | $0.32 | 36% |
| Crane | $90 | 250 sf | $0.36 | $61 | 300 sq/ft | $0.20 | 44% |
| Therapure | $180 | 200 sf | $0.90 | $180 | 343 sq/ft | $0.52 | 42% |
| **Average premium:** | | | | | | | **41%** |

27.     Being able to make a 99.97% "HEPA-filtration" claim is thus a huge boon for

manufacturers, and they know it.  The HEPA standard claim is a signal to consumers that the

product they are purchasing has been constructed to exacting standards and is able to provide

superlative levels of filtration.

---

[4] https://www.epa.gov/indoor-air-quality-iaq/what-hepa-filter'
(last visited September 16, 2025).

[5] CENTER FOR DISEASE CONTROL AND PREVENTION, Improving Ventilation in Your
https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/improving-ventilation-
home.html (last accessed September 15, 2025).

1

28.    The materiality to consumers of HEPA representations is further confirmed by

2    enforcement actions taken by regulators including the Federal Trade Commission, which has,

3    among other things, entered into Consent Decrees with manufacturers of air purifiers for claims

4    made about the efficacy of their HEPA purifiers and filters.  *See, e.g., In the Matter of Honeywell,*

5    FTC File No. 962-3154.[6]

6          **B.    Defendants' Products and Advertising**

7          29.    At issue in this action is the Clorox Model 11030 Air Purifier, and all other

8    substantially similar air purifiers which use the same filter as the one provided with the Model

9    11030.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[6] *Available at https://www.ftc.gov/legal-library/browse/cases-proceedings/962-3154-honeywell-inc-matter*



**Figure 1**

**Figure 2**

30.     Defendants crafted common false and misleading HEPA representations on their advertising for each of the Products.

31.     For instance, Defendants made the following express representations in the advertising for the HEPA air purifier  (Figures 1 and 2):

(a)     Equipped with a "true" HEPA filter

(b)     "Removes 99.9% of Mold, Viruses, Wildfire Smoke, Allergens, Dust

(c)     "Removes over 99.97% of allergens and particulates."

(d)     "True HEPA Filter Captures 99.97% of allergens and particulates as small as 0.1 microns."

32.     Defendants makes the same implied representation: that the filters used in the Air Purifier had been tested and performed at or above the "HEPA" standards for filtration.  In reality, they had not.

**C.     Defendants' Products Are Tested And Fail To Meet HEPA Standards**

33.     As part of their investigation into the Products, Plaintiff's counsel commissioned a highly reputable and independent American laboratory to conduct testing on the Products.  The results of the testing prove that Defendants' Products' Filters are not HEPA-grade.

34.     The lab chosen by Plaintiff's counsel is often used by companies to validate their filters and is an industry leader in the rigorous and accurate testing of HEPA filters.  The labs are certified by ANAB/ANSI, a non-governmental organization that provides accreditation services and training to public and private-sector organizations.  Moreover, the lab is well known for their stringent adherence to the various HEPA testing protocols set forth by the European Union, the International Standards Organization, and the United States.

35.     The testing was conducted in accordance with IEST-RP-CC001.7 (IEST), which is the protocol used in America to verify that a filter is HEPA-grade.  The test evaluates a filter's ability to filter out fine particles.

36.     To be classified as a HEPA filter under the IEST, the filter must have a filtration efficiency of <u>at least</u> 99.97%.  Particles ranging in size from 0.1 microns to 3.0 microns are used in the test.  The test is done over multiple stages, with each stage measuring the filtration efficiency

for a subset of particle sizes (*e.g.*, measuring how the filter performs for particles between 0.1 and 0.15 microns, then measuring performance from 0.15 to 0.2 microns).

37.    When Defendants' filter was tested under the IEST standard the results were 99.83% at 0.1 microns, well below the HEPA standard and below their claim of "99.9%" filtration.

38.    Indeed, Plaintiff's counsel had another Air Purifier tested at the same lab and the results were another fail: 99.84% at 0.1 microns and 99.92% at 0.3 microns.

**D.    But for Defendants' HEPA Misrepresentations, Plaintiff and the proposed Class would have paid less for their Air Purifier.**

39.    By falsely claiming that their Air Purifier had a HEPA filter, and selling their replacement filters as HEPA, Defendants were able to overcharge Plaintiff and the putative class members in the amount of a HEPA-related premium associated with those claims.

40.    Defendants' HEPA claims appeared on the webpages where their products were sold.  Accordingly, those claims were seen by all purchasers of the Air Purifier and replacement filters.

41.    Defendants' HEPA claims misled reasonable consumers.  Clorox is one of the nation's leading air-purifier manufacturers, so consumers would reasonably believe Defendants' HEPA claims.  Moreover, consumers do not and cannot typically test the accuracy of a HEPA claim before purchasing an air purifier, and Defendants' HEPA claims were expressly false, not impliedly false.

42.    If Defendants had been truthful in their representations about the Products (i.e., that they were not HEPA grade), then the market price of those purifiers and filters would have been lower.

43.    Accordingly, Plaintiff and the proposed Class paid for Defendants' Products at artificially inflated prices.

**CLASS ALLEGATIONS**

44.    ***Class Definition***.  Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of herself and all other similarly situated consumers, and seeks to represent classes defined as:

All natural persons Nationwide who purchased Defendants' Air
Purifier or replacement filter during the applicable statutory period
(the "Class").

All natural persons who purchased an Air Purifier or replacement
filter while in California during the applicable statutory period (the
"California Class").

45.     Excluded from the classes are governmental entities; Defendants; and Defendants'

affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded

is any judicial officer presiding over this matter and the members of their immediate families and

judicial staff.

46.     Plaintiff reserves the right to modify or expand the definition of the classes to seek

recovery on behalf of additional persons as facts are learned in further investigation and discovery.

47.     ***Numerosity.***  Members of the classes are so numerous that their individual joinder

herein is impracticable.  The precise number of Class members and their identities are unknown to

Plaintiff at this time but will be determined through discovery of Defendants' records.  Class

members may be notified of the pendency of this action by mail, email, publication, and/or other

media, including social media.

48.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all

Class members and predominate over questions affecting only individual Class members.  These

common legal and factual questions include, but are not limited to:

      a.  Whether the Products are in fact HEPA-grade;

      b.  Whether Defendants' express representations about the capability of the
Products included false and/or misleading statements and/or omissions;

      c.  Whether Defendants knowingly made false HEPA claims about the
Products;

      d.  Whether Defendants' representations were material;

      e.  Whether an objectively reasonable consumer would have been misled by
Defendants' HEPA claims; and

      f.  Whether Defendants' HEPA claims allowed it to charge more for the
Products than it otherwise could have.

49. *Typicality.* Plaintiff's claims are typical of the claims of the proposed classes because Plaintiff, like all members of the classes, was induced by Defendants' false and misleading warranties to purchase Defendants' Products without knowing that the Defendants' claims about the Products' filter were false and misleading. The representative Plaintiff, like all members of the classes, has been damaged by Defendants' misconduct in the very same way as the members of the classes. Further, the factual bases of Defendants' misconduct are common to all members of the classes and represent a common thread of misconduct resulting in injury to all members of the classes.

50. *Adequacy.* Plaintiff is an adequate representative of the classes Plaintiff seeks to represent because Plaintiff's interests do not conflict with the interests of the members of the classes; Plaintiff has retained counsel competent and experienced in prosecuting class actions; and Plaintiff intends to prosecute this action vigorously. The interests of the members of the classes will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

51. *Superiority.* A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the classes. Each individual member of the classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also represents a potential for inconsistent or contradictory judgments. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### Business & Professions Code § 17200, *et seq.*

52. Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.

53.     Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendants.

54.     This claim is brought under the laws of California.

55.     Defendants violated California's UCL by engaging in unlawful, fraudulent, and unfair conduct (*i.e.*, violating each of the three prongs of the UCL).

**The Unlawful Prong**

56.     Defendants engaged in unlawful conduct by violating the CLRA and FAL as referenced herein.

**The Fraudulent Prong**

57.     As alleged in detail above, Defendants misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had "HEPA" filters, despite knowing that they did not.

58.     Defendants, as manufacturer, marketer, licensor, and seller of the Products, were in a position to know (and did know) the true quality and capability of their Products but affirmatively warranted that the Products had a greater purifying ability than they actually did.

59.     As a result of these false and misleading practices, Defendants induced Plaintiff and the members of the California Class to purchase the Products that Plaintiff and the California Class members would not have purchased, or would have paid substantially less for, had Defendants been truthful about the quality and capability of their Products.

**The Unfair Prong**

60.     Defendants' conduct was unfair because, by claiming that their Products were equipped with HEPA filters, Defendants deceived consumers into believing that the Products' filters and replacement filters were HEPA-grade – a high standard for air purifying – even though they are not.  This is unfair because it led Plaintiff and the members of the California Class to purchase the Products that they otherwise would not have, or would have paid substantially less for, had they not been advertised as "HEPA." Defendants' misleading practice was also unfair because it gave Defendants an unfair advantage over competitors to the extent that Defendants' Air

Purifier is among the best-selling air purifiers in the marketplace, doing thousands of dollars in sales per month.

61.    The FTC has determined that false representations regarding the efficacy of HEPA air purifiers and filters constitute an unfair and deceptive trade practice.

62.    Plaintiff and the California Class members could not have reasonably avoided the injury.  Only Defendants were aware that their Air Purifier did not possess HEPA filters.

***

63.    For all prongs, Defendants' false and misleading conduct was intended to induce reliance, and Plaintiff and members of the California Class saw, read, and reasonably relied on Defendants' false and misleading warranties about the filtration capabilities of their Air Purifier and replacement filters.  Defendants' deceptive, misleading, and unfair conduct was a substantial factor in Plaintiff and the California Class's purchasing decisions.

64.    Defendants' misrepresentations were a substantial factor and proximately caused the damages and loss to Plaintiff and the members of the California Class.

65.    There was no benefit to consumers or competition from falsely claiming that the Products were of a quality that they were not.

66.    Plaintiff and the members of the California Class have suffered harm as a result of Defendants' violations of the UCL because they have incurred charges and/or paid monies they otherwise would not have incurred or paid had Defendants advertised their Products truthfully.

**COUNT II**
**Violations of California's False Advertising Law ("FAL")**
**Business & Professions Code § 17500, *et seq.***

67.    Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

68.    Plaintiff brings this claim individually and on behalf of the members of the California Class.

69.    This claim is brought under the laws of California.

70.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or

1  disseminated before the public in this state . . . in any advertising device . . . or in any other manner

2  or means whatever, including over the Internet, any statement, concerning . . . personal property or

3  service, . . . or performance or disposition thereof, which is untrue or misleading and which is

4  known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

5      71.     During the applicable statutory period, Defendants committed acts of false

6  advertising, as defined by the FAL, by making false and misleading representations about their

7  Products' filters being HEPA-grade to attract more purchasers than their Products would otherwise

8  have received.  Likewise, Defendants' false advertising induced consumers to purchase the

9  Products or pay more for the Products than consumers otherwise would have.

10     72.     Defendants knew or should have known, through the exercise of reasonable care,

11  that their claims about their Products' HEPA-grade filters were untrue and misleading.

12     73.     Defendants' actions in violation of the FAL were false and misleading such that the

13  general public is and was likely to be deceived.

14     74.     As a direct and proximate result of these acts, consumers have been and are being

15  harmed, including Plaintiff and the members of the California Class.  Plaintiff and the members of

16  the California Class have suffered injury and actual out-of-pocket losses as a result of Defendants'

17  FAL violation because: (a) Plaintiff, and the members of the California Class would not have

18  purchased Defendants' Products or would have paid substantially less for the Products had

19  Defendants not advertised them as "HEPA;" (b) Plaintiff and the members of the California Class

20  paid an increased price for the Products based on this advertising; and (c) the Products did not

21  confer the value they promised to confer because they did not actually contain HEPA filters.

22     75.     Plaintiff and the California Class are therefore entitled to: (a) full restitution of all

23  monies paid to Defendants as a result of their deceptive practices; (b) interest at the highest rate

24  allowed by law; and (c) the payment of Plaintiff's attorneys' fees and costs.

25                        **COUNT III**
                **Violations of California's Consumers Legal Remedies Act ("CLRA")**
26                    **Cal. Civ. Code § 1750, *et seq.***

27     76.     Plaintiff hereby incorporates by reference the allegations contained in this

28  Complaint.

1    77.    Plaintiff brings this claim individually and on behalf of the members of the

2    California Class against Defendants.

3    78.    This claim is brought under the law of California.

4    79.    Defendants is a "person," as defined by Cal. Civ. Code § 1761(c).

5    80.    Plaintiff and members of the California Class are "consumers," as defined by Cal.

6    Civ. Code § 1761(d).

7    81.    The Products purchased by Plaintiff and the California Class are "goods" as defined

8    by Cal. Civ. Code § 1761(a).

9    82.    The purchases by Plaintiff and the California Class constitute "transactions," as

10    defined by Cal. Civ. Code § 1761(e).

11    83.    As alleged more fully above, Defendants have violated the CLRA by furnishing

12    false and misleading statements about the quality and capabilities of their Products to attract and

13    induce more consumers to purchase their Products than would have otherwise been induced and

14    attracted to the Products without those false and misleading statements.

15    84.    As a result of engaging in such conduct, Defendants have violated California Civ.

16    Code §§ 1770(a)(5), (a)(7) and (a)(9).

17    85.    Defendants' conduct was likely to deceive, and did deceive, Plaintiff, the members

18    of the California Class, all of whom are reasonable consumers.  Defendants knew or should have

19    known through the exercise of reasonable care, that their claims about their Products' filtration

20    capabilities were false and misleading.

21    86.    Defendants' representations about their Products' HEPA filter were intended to

22    induce reliance, and Plaintiff and the members of the California Class, read, and reasonably relied

23    on the false and misleading affirmative representations when deciding to purchase Defendants'

24    Products.  Defendants' deceptive conduct was a substantial factor in Plaintiff's purchase decisions

25    and the purchase decisions of the proposed Class.

26    87.    Plaintiff and members of the California Class have suffered harm as a result of these

27    violations of the CLRA because they incurred charges and/or paid monies for the Products that

28    they otherwise would not have incurred or paid.

88.     In compliance with the provisions of California Civil Code § 1782, Counsel for Plaintiff sent written notice to Defendants on February 6, 2025, informing Defendants of their intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendants that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  Defendants did not provide such relief.  Accordingly, Plaintiff seeks money damages under the CLRA to the fullest extent permitted.

**COUNT IV**
**Fraud**

89.     Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

90.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendants under the laws of California states with materially similar laws.

91.     As alleged in detail above, Defendants misrepresented material facts about the Products, including by misrepresenting to consumers that the Products had HEPA filters, despite knowing that they did not.

92.     Defendants were in a position to know (and did know) the true quality and capability of their Products, but it affirmatively warranted that the Products had HEPA filters, when in truth they did not.  In fact, Plaintiff is informed and believe that Defendants knew through their own testing that their Products were not HEPA-grade, and were being falsely advertised as having HEPA filters.

93.     Defendants' misrepresentations, upon which Plaintiff and the members of the Class relied, were intended to induce, and actually did induce, Plaintiff and the members of the Class to purchase the Products.  Defendants induced Plaintiff and the members of the Class to purchase the Products that Plaintiff and the members of the Class would not have purchased, or would have paid

substantially less for, had Defendants been truthful about the quality and capability of their Products.

94.    Defendants' fraudulent actions caused damages to Plaintiff and the Class who are entitled to damages and other legal and equitable relief as a result.

**COUNT V**
**Unjust Enrichment**

95.    Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

96.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendants under the laws of California states with materially similar laws.

97.    As alleged in detail above, Defendants misrepresented material facts about their Products, including by misrepresenting to consumers that the Products had HEPA filters, despite knowing that they did not.

98.    Defendants were in a position to know the true quality and capability of their Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

99.    Substantial benefits have been conferred on Defendants by Plaintiff and the Class through the purchase of the Products.  Defendants knowingly and willingly accepted and enjoyed these benefits.

100.    Defendants either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Products would contain HEPA filters. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

101.    Defendants' acceptance and retention of these benefits of the payments from Plaintiff and the Class under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class.

102.    Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

## COUNT VI
### Breach of Express Warranty

103.    Plaintiff hereby incorporate by reference the allegations contained in this Complaint.

104.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendants under the laws of California and states with materially similar laws.

105.    As alleged in detail above, Defendants misrepresented material facts about their Products, including by misrepresenting to consumers that the Products had "HEPA" filters, despite knowing that they did not.

106.    Defendants were in a position to know the true quality and capability of their Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

107.    Substantial benefits have been conferred on Defendants by Plaintiff and the Class through the purchase of the Products.  Defendants knowingly and willingly accepted and enjoyed these benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court grant Plaintiff and all members of the proposed Class the following relief against Defendants:

(a)    An order certifying the Classes and naming Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

(b)    An order declaring that Defendants' conduct violates the statutes and common law referenced herein;

(c)    Compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(d)    Prejudgment interest on all amounts awarded;

(e)    Restitution and all other forms of equitable monetary relief;

1

2

    (f)     An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

    (g)     Granting such other and further relief as many be just and proper.

3

### JURY TRIAL DEMANDED

4

Plaintiff demands a trial by jury on all claims so triable.

5

6

7

Dated: October 31, 2025

                                      **BURSOR & FISHER, P.A**.

8

                                       By:    */s/ L. Timothy Fisher*
                                            L. Timothy Fisher

9

10

                                      L. Timothy Fisher (State Bar No. 191626)
                                      Luke Sironski-White (State Bar No. 348441)

11

                                      1990 North California Blvd., 9th Floor
                                      Walnut Creek, CA 94596

12

                                        Telephone: (925) 300-4455
                                      Facsimile: (925) 407-2700

13

                                        E-mail: ltfisher@bursor.com
                                               lsironski@bursor.com

14

15

                                      **SINDERBRAND LAW GROUP, P.C**.
                                      Greg Sinderbrand (State Bar No. 179586)

16

                                      2829 Townsgate Road, Suite 100
                                      Westlake Village, CA 91361

17

                                      Telephone: (818) 370-3912
                                      E-mail: greg@sinderbrandlaw.com

18

19

                                      *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff Roberta D'Alois resides in this District.

3.      Plaintiff is a resident of San Francisco, California.

4.      Defendant Clorox Corporation is a Delaware company with its principal place of business in Oakland, California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on October 31, 2025, at Walnut Creek, California.

                                                                  */s/ L. Timothy Fisher*
                                                                  L. Timothy Fisher